**REVISED**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**
_____

No. 95-40638
_____


RICKY BLANKENSHIP,

Plaintiff-Appellant,

VERSUS

GARY L. JOHNSON, Director,
Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____
July 17, 1997


ON PETITION FOR REHEARING

Before WISDOM, SMITH, and PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


Since the panel opinion was issued in this case, *see*
*Blankenship v. Johnson*, 106 F.3d 1202 (5th Cir. 1997), the Supreme
Court has held §§ 101-106 of the Antiterrorism and Effective Death
Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, 110 Stat. 1214
(1996) (codified at 28 U.S.C. §§ 2244, 2253-2254), inapplicable to
non-capital habeas corpus petitions filed before the act's

effective date of April 24, 1996. *See Lindh v. Murphy*, No. 96-6298, 65 U.S.L.W. 4557 (U.S. June 23, 1997). As the petitioner's habeas petition pre-dated the act, he is not subject to it. Accordingly, the petition for rehearing is GRANTED. We withdraw the opinion and substitute the following:

Ricky Blankenship appeals the denial of his petition for writ of habeas corpus. Concluding that he was entitled to effective assistance of counsel on a discretionary review *requested by the state*, we reverse and remand.

## I.

In 1988, Blankenship was convicted of aggravated robbery, sentenced to ten years in prison and released pending appeal. On direct appeal, his court-appointed attorney, Michael Lantrip, successfully argued that the indictment was fatally deficient because it listed Blankenship's victim as "Armando" when the actual victim was Armando's brother, Rudolfo. The court of appeals reversed and ordered an acquittal. *See Blankenship v. Texas*, 764 S.W.2d 22 (Tex. App.SSTexarkana 1989).

Unbeknownst to Blankenship, Lantrip had been elected county attorney shortly after he argued Blankenship's appeal. Lantrip did not inform his client of this fact or withdraw from the case.

In January 1989, the local district attorney and the state

2

prosecuting attorney filed petitions with the Texas Court of Criminal Appeals seeking discretionary review of the reversal. These petitions were served on Lantrip, who still was Blankenship's attorney of record but did not inform his client of the petitions or take any action on them.

In June 1989, the Court of Criminal Appeals granted the petitions for discretionary review. Again, Lantrip did not inform Blankenship of this event, file any brief on his behalf, appear, or take any other action whatsoever. In March 1990, the Court of Criminal Appeals reversed the court of appeals, thereby reinstating the conviction, because "there was evidence that Rudolfo was known as Armando." *Blankenship v. Texas*, 785 S.W.2d 158, 160 (Tex. Crim. App. 1990) (en banc).

Blankenship had no knowledge of these events. It came as a considerable shock to him when, some fifteen months after the reversal of his conviction by the intermediate court, the police arrived to arrest him in April 1990.

Blankenship wrote a number of letters to Lantrip but received no response. Finally, in November 1991, Lantrip answered Blankenship: "I have not withdrawn. I was elected County Attorney and by law I cannot represent a defendant in a criminal matter and also be a prosecutor for the State of Texas."

Blankenship filed a state habeas corpus petition, which was denied on June 24, 1994.[1] He then filed the instant federal habeas

---

[1] For the first time on appeal, Blankenship argues that he is entitled to relief on the ground of double jeopardy. As he failed to present this issue to

(continued...)

3

petition, alleging that he was denied effective assistance of counsel before the Court of Criminal Appeals because of Lantrip's total inactivity and conflict of interest. The district court denied the petition, and we granted Blankenship's motion for a certificate of probable cause ("CPC") to appeal.

## II.

In *Drinkard v. Johnson*, 97 F.3d 751, 764-66 (5th Cir. 1996), *cert. denied*, 117 S. Ct. 1114 (1997), we held that the new standards of review contained in § 104(3) of the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1219 (1996) (codified at 28 U.S.C. § 2254), apply to all pending cases. On February 20, 1997, we issued an opinion in this case. *See Blankenship v. Johnson*, 106 F.3d 1202 (5th Cir. 1997).

The panel majority stated that it was "bound by the rigid constraints of the AEDPA" and could "undermine the state courts in proceedings such as this only if their decisions are contrary to clear, then-existing Supreme Court precedent." *Id.* at 1206. The panel majority, concluding that Blankenship had not met this high standard, affirmed the denial of relief. *See id.* The dissent concluded that an indigent criminal defendant's right to counsel when a state seeks and is granted discretionary review was well established by existing law.

---

(...continued)
the state courts as required by 28 U.S.C. § 2254(b)-(c), we may not review this claim. *See Bufalino v. Reno*, 613 F.2d 568, 570 (5th Cir. 1980).

4

The Supreme Court now has taught us that the AEDPA is not applicable to this case. Relying on the canon of *expressio unius est exclusio alterius*, the Court divined that Congress intended "to apply the amendments to chapter 153 only to such cases as were filed after the statute's enactment." *Lindh v. Murphy*, No. 96-6298, 65 U.S.L.W. 4557, 4558 (U.S. June 23, 1997). As § 2254 is a part of chapter 153, *Lindh* effectively overrules *Drinkard* insofar as the retroactivity of the chapter 153 amendments are concerned. *See Green v. Johnson*, No. 96-50669, 1997 WL 359070, at *3 n.2 (5th Cir. June 27, 1997).

Blankenship filed his habeas petition in February 1995, well before the effective date of the AEDPA.[2] Our earlier decision, therefore, is untenable in light of *Lindh*.

III.

A.

The district court held that Blankenship had no right to the assistance of counsel during proceedings in the Court of Criminal Appeals. We review determinations of law *de novo*. *See Dison v. Whitley*, 20 F.3d 185, 186 (5th Cir. 1994).

A claim of ineffective assistance of counsel must be predicated upon an underlying right to the assistance of counsel.

---

[2] Section 102 of the AEDPA amended 28 U.S.C. § 2253 to require a "certificate of appealability" before a final order in a habeas proceeding can be appealed. *See* 110 Stat. at 1217. Section 2253 also is a part of chapter 153. Therefore, this new requirement does not apply to Blankenship's appeal, and the grant of a CPC is sufficient to vest jurisdiction in this court. *See Green*, 1997 WL 359070, at *3.

*See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (per curiam) ("Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel."). Thus, we must decide whether Blankenship had a right to counsel during his appeal before the Court of Criminal Appeals. This is a matter of first impression.

B.

Usually, *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion), prohibits the application of a new rule of law in the context of a habeas petition. The rule, however, is not jurisdictional; the state may waive it. *See Collins v. Youngblood*, 497 U.S. 37, 41 (1990). The state also may waive the *Teague* bar implicitly by failing to raise it. *See Schiro v. Farley*, 510 U.S. 222, 228-29 (1994); *Godinez v. Moran*, 509 U.S. 389, 397 n.8 (1993).

The state raises *Teague* as a defense to prevent our holding that Lantrip was deficient in advising Blankenship of his right to further appellate review.[3] Also, in its brief filed in this court, under "Standard of review," the state mentions that "Blankenship generally may not obtain relief based on new rules of constitutional law that have yet to be announced or that were

---

[3] *See Ex parte Jarrett*, 891 S.W.2d 935, 939-40 (Tex. Crim. App. 1994) (en banc) (holding that a defense attorney must advise his client of the meaning and effect of an adverse appellate decision and his right to seek review in the Court of Criminal Appeals). As Blankenship won on direct appeal, the right to petition the Court of Criminal Appeals belonged to the state, not to him, so *Jarrett* is inapplicable.

announced after his conviction became final."[4]

The state, however, never asserted *Teague* against the claim that Blankenship had a right to counsel on state-requested discretionary review, nor did it provide any argument or reasoning as to why *Teague* might apply there. In such a situation, we feel secure in stating that the state has waived its *Teague* argument, at least as to Blankenship's claim that he had a right to counsel in the state-requested discretionary review.[5]

This is unlike the situation in *Goeke v. Branch*, 514 U.S. 115, 117 (1995) (per curiam), in which the state raised the *Teague* defense before both the district court and the court of appeals. There, the defense was raised, albeit in an informal manner; here, the state has not asserted it at all as a defense to the claim that Blankenship had a right to counsel on state-requested discretionary review. We do not read *Branch* as eclipsing rule 28.

C.

Although Texas has waived the *Teague* defense implicitly, we nonetheless have the discretion to apply it. *See Caspari v.*

---

[4] Before the district court, the state did not even raise *Teague* in opposition to a *Jarrett* claim. The only mention of *Teague* was a statement like the one reported above.

[5] *See* FED. R. APP. P. 28(a)-(b) (requiring briefs to "contain the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on"); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 260 n.9 (5th Cir. 1995) (holding that "failure to provide any legal or factual analysis of an issue results in waiver"); *United States v. Maldonado*, 42 F.3d 906, 910 n.7 (5th Cir. 1995) (reasoning that failure to do more than vaguely refer to an issue constitutes waiver); *Zuccarello v. Exxon Corp.*, 756 F.2d 402, 407 (5th Cir. 1985) (noting that court will not consider an issue that was not briefed under standards of rule 28).

*Bohlen*, 510 U.S. 383, 389 (1994).  We decline to do so.

The Court of Criminal Appeals issued its judgment on April 3, 1990.  Blankenship had only until July 2 to file a petition for writ of certiorari with the United States Supreme Court.  *See* SUP. CT. R. 13.1.  Upon motion, and for good cause shown, the Circuit Justice could have extended this deadline until August 31.  *See* SUP. CT. R. 13.2, 493 U.S. 1109 (1989) (repealed 1995).  During that time, Blankenship had no knowledge of the events surrounding the proceedings in the Court of Criminal Appeals.  Lantrip did not respond to his repeated inquiries until November 1991, long after the deadline for filing a certiorari petition.

In short, it was not possible for Blankenship to raise, on direct appeal, his claim of ineffective assistance regarding state-requested discretionary review.  So, under the circumstances, we will not exercise our discretion to consider the *Teague* bar that the state has waived.  This decision does not imply that *Teague* would have barred Blankenship's claim, had we reached that issue.


IV.

We acknowledge the well-settled rule that a criminal defendant does not have a right to counsel for the preparation of petitions for discretionary review.  *See Ross v. Moffitt*, 417 U.S. 600 (1974).  Texas asks us to extend this rule and hold that there is no right to counsel during the discretionary review itself.  In deciding this issue, we need consider only the situation in which the state, rather than the defendant, has requested and obtained

8

the discretionary review.

For many years, the courts have held that indigent criminal defendants have the right to appointed counsel in direct appeals. *See Douglas v. California*, 372 U.S. 353 (1963). This right arises from the Equal Protection and Due Process Clauses. *See United States v. Palomo*, 80 F.3d 138, 141 (5th Cir. 1996).

This right would be impaired, however, if the state were allowed to challenge the defendant's successful direct appeal without providing him with counsel after a discretionary appeal is granted to the state. The indigent criminal defendant, unrepresented by counsel, would be unable to defend the reversal of his conviction in all but the most compelling cases.

Furthermore, if the state felt it was likely that discretionary review would be granted on its petition, it could sandbag the first appeal. Knowing that its arguments on direct appeal would be contradicted by competent legal counsel, it could save its strongest arguments for the discretionary appeal. In this regard, we note that the district attorney who prosecuted Blankenship offered only a four-page brief on direct appeal. Before the Court of Criminal Appeals, however, the state filed two briefs totaling some sixteen pages. The later briefs are incomparably more thorough and well researched.

Finally, we find the words of the Supreme Court informative: "But where the merits of *the one and only appeal* an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor."

9

*Douglas*, 372 U.S. at 357. In the instant case, Blankenship was without counsel the only time the merits of his only appeal were decided against him.

Now considering this question unfettered by statutorily-mandated deference, we find that the arguments in favor of a right to counsel on state-requested discretionary review are persuasive. The constitutional guarantees of equal protection and due process entitled Blankenship to counsel before the Court of Criminal Appeals.

## V.

### A.

As we hold that Blankenship had the right to counsel during the state-requested discretionary appeal,[6] we must determine whether he indeed suffered from ineffective assistance of counsel during that appeal. *See Evitts v. Lucey*, 469 U.S. 387, 397 (1985) (holding that "the promise . . . that a criminal defendant has a right to counsel on appeal . . . would be a futile gesture unless it comprehended the right to the effective assistance of counsel"). Usually, a finding of ineffective assistance requires a finding that (1) counsel's performance was deficient and (2) that deficiency prejudiced the defendant. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Prejudice is presumed when counsel is

---

[6] We address only the right to effective counsel once the state has successfully obtained discretionary review in the Court of Criminal Appeals. We express no view as to whether a defendant in Blankenship's circumstance has the right to effective counsel to oppose the state's *request* for such discretionary review.

denied completely, either actually or constructively.[7]

Lantrip did nothing whatsoever in the review by the Court of Criminal Appeals. Thus, constructively, Blankenship was denied counsel. *Cf. Lombard*, 868 F.2d at 1481 (holding that when counsel did not withdraw[8] but failed to raise any issues on appeal, assistance of counsel was constructively denied). Therefore, Blankenship need not demonstrate prejudice to obtain relief.

B.

Alternately, Blankenship can prove ineffective assistance by showing that (1) counsel actively represented conflicting interests and (2) an actual conflict of interest adversely affected his performance. *See Culyer v. Sullivan*, 446 U.S. 335, 348 (1980); *Beets v. Scott*, 65 F.3d 1258, 1265 (5th Cir. 1995) (en banc), *cert. denied*, 116 S. Ct. 1547 (1996). As Lantrip was a county attorney at the time of the discretionary appeal, the first prong is met; the second prong is demonstrated by Lantrip's inaction. Under either theory, Blankenship was denied effective assistance on the

---

[7] *See Penson v. Ohio*, 488 U.S. 75, 88 (1988) ("Because the fundamental importance of the assistance of counsel does not cease as the prosecutorial process moves from the trial to the appellate stage, the presumption of prejudice must extend as well to the denial of counsel on appeal.") (citation omitted); *Lombard v. Lynaugh*, 868 F.2d 1475, 1480 (5th Cir. 1989).

[8] Under Texas law, Lantrip remained Blankenship's attorney. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(a) (Vernon 1989) ("An attorney appointed under this subsection shall represent the defendant until charges are dismissed, the defendant is acquitted, appeals are exhausted, or the attorney is relieved of his duties by the court or replaced by other counsel."); *Ward v. Texas*, 740 S.W.2d 794, 796-97 (Tex. Crim. App. 1987) (en banc); *see also* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.15(d), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon Supp. 1997) (TEX. STATE BAR R. art. X, § 9) ("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client . . . .").

state-requested discretionary appeal.

VI.

The proper remedy for this constitutional violation is the same as the one we fashioned in *Lombard*, 868 F.2d at 1484:

> [T]he district court's judgment denying habeas relief is reversed, and the cause is remanded to the district court so that it may enter judgment granting the writ of habeas corpus issue [sic] unless the state affords [the defendant] an out-of-time [rehearing in the Court of Criminal Appeals] within such reasonable time as the district court may fix, and for further proceedings not inconsistent herewith.

The judgment, accordingly, is REVERSED and REMANDED.